IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| Teresa Mary Palmer, Gary Dean Grider, | ) | |
| Teresa Marita Palmer, James William Palmer | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| Shawnee Mission Medical Center, Inc. | ) | |
| And Mid America Physician Services, LLC | ) | COMPLAINT |
| Defendants. | ) | |

Jury Trial Demanded

## **COMPLAINT Against Shawnee Mission Medical Center, Inc. and Mid America Physician Services, LLC**

COMES NOW Plaintiffs Teresa Mary Palmer, Gary Dean Grider, Teresa Marita Palmer, and James William Palmer and for their cause of action against Defendants Shawnee Mission Medical Center, Inc. (hereinafter SMMC) and Mid America Physician Services, LLC (hereinafter MAPS) states:

### **Introduction and Parties**

1. Plaintiff Teresa Mary Palmer was at all times complained of herein, a resident of Leawood, Johnson county, Kansas and is not a minor.

2. Plaintiff Gary Dean Grider was at all times complained of herein, a resident of Leawood, Johnson county, Kansas, is married to Teresa Mary Palmer and is not a minor.

3. Plaintiff Teresa Marita Palmer was at all times complained of herein, a resident of Osburn, Shoshone county, Idaho, is the mother of Plaintiff Teresa Mary Palmer and is not a minor.

4. Plaintiff James William Palmer was at all times complained of herein, a resident of Osburn, Shoshone county, Idaho, is married to Teresa Marita Palmer and is Plaintiff Teresa Mary Palmer's father and is not a minor.

5. Defendant SMMC (business entity ID Number 0192559) is a Kansas hospital, doing business as Shawnee Mission Medical Center, and a not for profit corporation, active in good standing. At all times relevant herein Defendant SMMC was fully licensed to operate an acute care hospital at 9100 West 74th Street, Merriam, Kansas, 66201, by the Kansas Department of Health and Environment.

6. Defendant MAPS is a Kansas LTD Liability Company (business entity ID Number 4705968), with a mailing address of Gary W. Mitchell 9301 West 74th Street, Shawnee Mission, Kansas 66204 and is active and in good standing.

7. Service of Process can be obtained by serving SMMC's Registered Agent: Karsten Randolph, 9100 West 74th Street, Merriam, KS 66201.

8. Service of Process can be obtained by serving MAPS's Registered Agent: Randal L. Schultz, 10851 Mastin Blvd., Suite 1000, Overland Park, KS 66210. 9. At all relevant times, Defendant SMMC held out as a specialist in the field of acute medical and surgical care, and *inter alia,* maintained a "Birth Center".

10. At all relevant times, Defendant MAPS held itself out, *inter alia,* as a specialist in the field of Obstetrics and Gynecology, providing physician services.

11. This court has subject matter jurisdiction of this action under 13 U.S.C.§1331 as this action arises under the law of the United States.

12. That Defendants SMMC and MAPS were at various and relevant times under the contractual and common law duty to provide reasonable, adequate and safe health and medical care, assessment, diagnosis, and treatment to Plaintiff Teresa Mary Palmer consistent with existing hospital policy, established community standards, and federal and state law.

13. That Defendants SMMC and MAPS, and all its employees, agents, officers, and servants negligently and carelessly provided care and treatment to Plaintiff Teresa Mary Palmer, and all of the alleged acts, omissions, and occurrences herein described against SMMC and MAPS, were performed by Defendants SMMC and MAPS, its employees, agents, officers, and servants within the course and scope of their agency and employment with Defendants SMMC and MAPS, and in furtherance of Defendants' businesses.

14. Plaintiff Teresa Mary Palmer awoke around 1:00 AM, Nov 5, 2014 with cramps, pain and a new vaginal bloody discharge then called the number on her OB/Gynecologist's business card; spoke to a nurse who said a doctor would call Plaintiff back.

15. About five minutes later a doctor called and claimed "nothing to worry about", but warned if pain increased, go to the hospital.

16. Around 2:00 A.M., all four Plaintiffs drove to Defendant SMMC's Birth Center.

17. At or around, 2:32 A.M., November 5, 2014, Plaintiff Teresa Mary Palmer was admitted to the Labor Triage section for observation at Defendant SMMC's Birth Center complaining of a new vaginal bloody discharge, abdominal cramps, and pain.

18. Plaintiff Teresa Mary Palmer was examined multiple times by several different non-physician providers prior to her discharge at Defendant SMMC's Birth Center.

19. Defendant SMMC's observation of Plaintiff included Fetal Monitoring data that was recorded onto the Fetal Monitor's Chart Paper, totaling 46 pages, however, pages 26 to 31 were blank due to improper operation of the Fetal Monitor device.

20. After repeated exams, critically important clinical information remained undetermined rendering the exam results inconclusive.

21. Defendant SMMC maintains an on-call, in-house, Board-certified, OB Hospitalist (physician) available 24/7 to solve OB problems.

22. Plaintiff was discharged to her home via her private car with a diagnosis of False Labor (Braxton Hicks contractions) after over five hour's observation that demonstrated increasingly painful cramps throughout the entire period.

23. Plaintiff Teresa Mary Palmer walked from the Lobby to the admission area without assistance when first admitted around 2:15 AM, but required a wheelchair to return to the Lobby after discharge due to pain, at 7:38 AM.

24. Once seated in the wheelchair, Plaintiff Teresa Mary Palmer, at one point, had to stand up and bend over to endure a particularly painful cramp in full view of several providers and/or medical staff.

25. Once Plaintiff Teresa Mary Palmer arrived home, she continued to experience increasingly painful cramps of longer duration and increased frequency.

26. Plaintiff Teresa Mary Palmer followed her discharge instructions; took a Tylenol, and tried to sleep, then reclined in a warm bath, however the uncontrollable urge to "pound the wall with her closed fist while screaming when contractions occurred", made relaxation impossible.

27. 911 was called when it became apparent the diagnosis was incorrect and when the EMS technician first entered the house he said, "That's not Braxton Hicks" when he heard the screams coming from the bathroom on the other side of the house.

28. The first responders to the 911 call arrived in a Fire Engine and advised Plaintiffs a dedicated EMS vehicle was on its way with EMS personnel.

29. An EMS responder assured Plaintiffs he could deliver the baby in the bathroom, was experienced in these matters, and the situation was under control. He then said, "Boys we are doing it right here."

30. Plaintiff Teresa Mary Palmer was laid onto the bathroom's tile floor where she was connected to a monitoring device and examined by EMS personnel, who said he could see the crown and had to deliver the fetus here in the bathroom.

31. Warm towels were requested and Plaintiff Teresa Mary Palmer delivered Hayden James Hartman at 9:14 A.M., November 5, 2014; one hour and thirty-six minutes after discharge from Defendant SMMC's Birth Center, a thirty minute drive from Plaintiff Teresa Mary Palmer's house.

32. Plaintiff Teresa Mary Palmer and Hayden James Hartman were transported to Defendant SMMC's Birth Center by ambulance where they were admitted for evaluation and care.

33. Plaintiff James William Palmer contacted the Kansas Department of Health and Environment by phone and complained of the treatment his daughter received at Defendant SMMC's Birth Center earlier that week.

34. As a result of the complaint of Plaintiff James William Palmer, the Kansas Department of Health and Environment referred the matter to the responsible federal agency (CMS) who undertook an investigation of the complaint as required by federal law.

35. As part of the investigation, federal law required an unannounced on-site inspection of SMMC's hospital facilities within 15 days of the complaint's referral to CMS.

36. During the investigation subsequent to Plaintiff James William Palmer's complaint to the Kansas Department of Health and Environment, it was determined that Defendant SMMC violated 42 U.S.C. §1395dd (EMTALA) on two occasions and issued a Statement of Deficiencies identifying the exact violations of federal law.

37. Defendant SMMC was cited by CMS for not providing Plaintiff Teresa Mary Palmer with a proper Medical Screening Examination and improperly discharging an unstable patient, Plaintiff Teresa Mary Palmer.

38. Defendants by the alleged acts and/or omissions of negligence breached the duty of ordinary care and diligence owed to Plaintiff Teresa Mary Palmer and as a proximate cause and direct result thereof, Plaintiffs were injured.

39.  Plaintiffs request the court invoke supplemental jurisdiction over the Kansas state claims as the state claims flow from the same nucleus of operative facts and amount to the same case or controversy.

40. The misdiagnosis of Braxton Hicks contractions (aka False Labor) led to consequences, that once started, triggered a cascade of irreversible, dangerous events, leading to the painful, unplanned home-birth without the benefits of a physician's assistance or any pain medication.

**COUNTS 1-5 :  EMTALA,  42 U.S.C. §1395dd  Liability of Defendants SMMC and MAPS**

Plaintiffs incorporate all previous paragraphs of this Complaint as though fully set forth here.

41. That Defendant SMMC had a duty (Emergency Medical Treatment Active Labor Act –EMTALA, 42 U. S. C. §1395dd) to provide Plaintiff Teresa Mary Palmer a medical screening examination to

determine if she suffered any emergency medical condition once Plaintiff Teresa Mary Palmer showed up at the Shawnee Mission Birth Center, a section of Defendant SMMC, seeking help. Once admitted, Defendant SMMC provided Plaintiff Teresa Mary Palmer an inappropriate, disparate medical screening examination in violation of established hospital policy, federal anti-discrimination and state law, and unlike the exams provided other similarly situated patients.

42. After observing Plaintiff for over five hours in the Labor Triage Section of Defendant SMMC's Birth Center, Defendant SMMC discharged Plaintiff Teresa Mary Palmer in violation of established hospital policy, EMTALA and other federal and state law, and acceptable medical standards that require patients experiencing over five hours of increasingly painful cramps of longer duration and occurring more frequently, not be discharged until after the birth is completed and the patient stable.

43. Defendant SMMC failed its duty (EMTALA), to stabilize within its capabilities, Plaintiff Teresa Mary Palmer when it discharged her (an unstable patient in active labor) to a private car with no medical capabilities whatsoever.

44. Defendant SMMC failed its duty (EMTALA), to stabilize within its capabilities, Plaintiff Teresa Mary Palmer's emergency medical condition. Defendant SMMC failed to provide an advanced trained and more qualified medical provider to resolve the discrepancies of Plaintiff Teresa Mary Palmer's multiple exams, even though a resident Board-certified OB Hospitalist, physician, was available "in-house" throughout the entire period Plaintiff Teresa Mary Palmer was observed. Plaintiff Teresa Mary Palmer was never examined by a physician prior to her discharge.

45. Defendant SMMC failed its duty (EMTALA) to have its employees and agents notify the proper authorities of a "suspected EMTALA violation" within 72 hours as required by EMTALA, 42 U.S.C. 1395dd, when an investigation revealed there were two "actual" EMTALA violations which occurred, November 5, 2014 at Defendant SMMC's Birth Center and remains unreported by all of Defendant's employees and agents.

C:\Users\TEDDYV~1\AppData\Local\Temp\notesDD3EAD\Complaint Filed 2Nov16.docx

7

46. The dangerous and unplanned home birth that resulted from the abandonment and improper discharge of Plaintiff Teresa Mary Palmer caused severe emotional distress to all Plaintiffs, and created the fear of worsening complications in a home environment lacking the security of a physician assisted, hospital birth we had planned on since Plaintiff Teresa Mary Palmer became pregnant; with additional physical pain and suffering experienced by Plaintiff Teresa Mary Palmer.

47. Defendants SMMC's and MAPS's conduct was outrageous because Defendants acted with an evil motive and/or with reckless indifference to the rights of Plaintiffs, thereby entitling Plaintiffs to recover punitive damages from Defendants.

48. WHEREFORE, by reasons of the premises contained herein, Plaintiffs Gary Dean Grider, Teresa Marita Palmer, and James William Palmer, respectfully requests that judgement be entered in favor of Plaintiffs Gary Dean Grider, Teresa Marita Palmer, and James William Palmer, and against Defendants SMMC and MAPS, in excess of Seventy-Five Thousand Dollars for compensatory damages in an amount that is fair and reasonable, plus punitive damages in an amount sufficient to deter Defendants and others from the same or similar conduct, plus pre-judgment interest and post-judgment interest as provided by law and equity, plus court costs, and for such other and further relief as is just and proper.

49. WHEREFORE, by reasons of the premises contained herein, Plaintiff Teresa Mary Palmer respectfully requests that judgement be entered in her favor against Defendants SMMC and MAPS, in excess of Seventy-Five Thousand Dollars for compensatory damages in an amount that is fair and reasonable, plus punitive damages in an amount sufficient to deter Defendants and others from the same or similar conduct, plus pre-judgment interest and post-judgment interest as provided by law and equity, plus court costs, and for such other and further relief as is just and proper.

**COUNTS 6- 9 : STRICT LIABILITY OF DEFENDANTS SMMC AND MAPS**

Plaintiffs incorporate all previous paragraphs of this Complaint as though fully set forth here.

50. After admitting Plaintiff Teresa Mary Palmer for observation, she was examined several times by various non-physicians providers to determine important clinical information.   The multiple exams failed to provide conclusive determinations of important clinical data and above all, the progression of labor. Defendants SMMC and MAPS failed their duty to perform a proper medical screening examination of Plaintiff Teresa Mary Palmer when it failed to determine critically important clinical information needed to properly care and treat the patient by ending examination efforts and discharging her without determining the information whose uncertainty justified the six examinations in the first place.

51. The examination/s provided Plaintiff Teresa Mary Palmer was not the examination similarly situated patients receive.  Admitting a "high risk" 42 year old patient and observing her for over five hours without ever determining critically important clinical parameters or having a physician examine the patient, amounts to actionable negligence that rises to the level of an abnormally dangerous activity and violates the Kansas Common Law doctrine of Strict Liability.

52. Plaintiff Teresa Mary Palmer was admitted to Defendant SMMC's Birth Center after presenting with abdominal cramps and a new vaginal bloody discharge.  Plaintiff Teresa Mary Palmer walked from the Lobby to the admission area without assistance when first admitted around 2:15 AM, but required a wheelchair to get to the Lobby after discharge due to pain at 7:38 AM.  Once seated in the wheelchair, Plaintiff Teresa Mary Palmer had to stand up and bend over to endure a particularly painful cramp in full view of several providers and/or medical staff.

53. Defendants SMMC and MAPS discharged Plaintiff Teresa Mary Palmer, an OB patient who was unable to walk to the lobby due to pain levels not present five hours earlier, with a diagnosis of False Labor only to experience a dangerous, unplanned, home birth on her bathroom floor 1 ½ hours after her discharge, which amounts to actionable negligence that rises to the level of an abnormally dangerous activity and renders Defendants SMMC and MAPS in violation of the Kansas Common Law doctrine of Strict Liability.

54. Defendants SMMC and MAPS have a duty to stabilize unstable patients prior to their transfer from the Birth Center. Defendants SMMC and MAPS discharged Plaintiff Teresa Mary Palmer after over five hour's observation and she was sent home in her private car with a diagnosis of False Labor. When discharged, Plaintiff Teresa Mary Palmer was unable to walk and was taken to the Lobby in a wheelchair where her car was waiting. Discharging a high risk OB patient with a five hour history of increasing pain who is in active labor and unable to walk, to a private car, with no medical capabilities whatsoever, is an abnormally dangerous activity, violates the duty to stabilize and renders Defendants SMMC and MAPS in violation of the Kansas Common Law doctrine of Strict Liability.

55. Defendants SMMC and MAPS violated their duty to stabilize an unstable patient when they failed to provide a readily available and critical resource (in-house, on-call, Board-certified OB Hospitalist physician) to resolve the inconclusive exam results determined by non-physician providers. Not having the physician resolve the inconclusive exam results amounts to "giving up early" in the clinical investigation, and was ill-advised and dangerous. Plaintiff Teresa Mary Palmer was a high-risk patient due to advanced maternal age (42) with no prior births, suffering gestational diabetes and chronic hypertension, in preterm labor at 36.2 weeks gestation. Failing to utilize the readily available resource of a Board-certified physician (OB Hospitalist) to resolve the uncertainty of critically important data, prior to discharge, amounts to an abnormally dangerous activity rendering Defendants SMMC and MAPS in violation of the Kansas Common Law doctrine of Strict Liability.

56. The dangerous and unplanned home birth that resulted from the abandonment and improper discharge of Plaintiff Teresa Mary Palmer caused severe emotional distress to all Plaintiffs, and created the fear of worsening complications in a home environment lacking the security of a physician assisted, hospital birth we had planned on since Plaintiff Teresa Mary Palmer became pregnant; with additional physical pain and suffering experienced by Plaintiff Teresa Mary Palmer.

57. Defendants SMMC's and MAPS's conduct was outrageous because Defendants acted with an evil motive and/or with reckless indifference to the rights of Plaintiffs, thereby entitling Plaintiffs to recover punitive damages from Defendants.

58 .WHEREFORE, by reasons of the premises contained herein, Plaintiffs Gary Dean Grider, Teresa Marita Palmer, and James William Palmer, respectfully requests that judgement be entered in favor of Plaintiffs Gary Dean Grider, Teresa Marita Palmer, and James William Palmer, and against Defendants SMMC and MAPS, in excess of Seventy-Five Thousand Dollars for compensatory damages in an amount that is fair and reasonable, plus punitive damages in an amount sufficient to deter Defendants and others from the same or similar conduct, plus pre-judgment interest and post-judgment interest as provided by law and equity, plus court costs, and for such other and further relief as is just and proper.

59.WHEREFORE, by reasons of the premises contained herein, Plaintiff Teresa Mary Palmer respectfully requests that judgement be entered in her favor against Defendants SMMC and MAPS, in excess of Seventy-Five Thousand Dollars for compensatory damages in an amount that is fair and reasonable, plus punitive damages in an amount sufficient to deter Defendants and others from the same or similar conduct, plus pre-judgment interest and post-judgment interest as provided by law and equity, plus court costs, and for such other and further relief as is just and proper.

## COUNTS 10-13:  RES  IPSA  LOQUITUR LIABILITY OF DEFENDANTS SMMC AND MAPS

Plaintiffs incorporate all previous paragraphs of this Complaint as though fully set forth here.

60. Plaintiff Teresa Mary Palmer was examined several times over the course of her admission to Defendant SMMC's Birth Center by various non-physician providers.  Six vaginal exams, all of which included a component that caused Plaintiff Teresa Mary Palmer pain and discomfort, were unable in the aggregate, to determine vitally important clinical parameters and the current stage of labor.

61. Defendants SMMC and MAPS violated their duty of the standard of reasonable care and established hospital policy when they supported and encouraged 6 instances (vaginal exams) of unpermitted physical contact that caused Plaintiff Teresa Mary Palmer mental anguish, fear, pain and discomfort while failing to determine critical clinical information.

62. Abandoning Plaintiff Teresa Mary Palmer's examination efforts prior to determining the information that justified the exams in the first place amounts to unpermitted physical contact (6 vaginal examinations) that caused mental and physical harm, and was a deviation from the protocol/or actions to which Plaintiff Teresa Mary Palmer had consented and renders Defendants SMMC and MAPS in violation of the established hospital policy and amounts to medical battery upon Plaintiff Teresa Mary Palmer.

63. Defendants SMMC and MAPS were aware that Plaintiff Teresa Mary Palmer suffered the complications of chronic hypertension, advanced maternal age (42) and gestational diabetes, all of which increased her risk of problems. Defendants SMMC and MAPS intended to discharge, and did discharge Plaintiff Teresa Mary Palmer when her last written pain assessment was recorded to be 5/10 (verses 3/10 earlier), and when her pain was so intense she was unable to walk and required a wheelchair to travel to the Lobby and her private car.

64. Both Defendants, SMMC's and MAPS's agents and employees, were aware, or should have known, that discharging Plaintiff Teresa Mary Palmer, a "high risk" patient to her home via a private car, while in active labor with over five hours of increasingly painful cramps, when she was unable to walk, will likely result in a dangerous, unplanned, home birth and was ill-advised, dangerous and in violation of established hospital policy and current best medical practices, Federal and State law, and caused Plaintiffs severe injury.

65. Plaintiff Teresa Mary Palmer was discharged with instructions to seek medical attention/help if she develops any of four conditions, one of which was present at discharge. Discharging a patient with instructions to look for and seek help for a condition already present is dangerous and so far removed from standard care and established hospital policy as to amount to reckless indifference to

an abnormally dangerous activity and injured Plaintiffs severely by inflicting on them the extreme emotional distress of learning Defendants SMMC and MAPS had no clue as to what was happening.

66. The dangerous and unplanned home birth that resulted from the abandonment and improper discharge of Plaintiff Teresa Mary Palmer by Defendants caused severe emotional distress to all Plaintiffs, and created the fear of worsening complications in a home environment lacking the security of a physician assisted, hospital birth we had planned on since Plaintiff Teresa Mary Palmer became pregnant; with additional physical pain and suffering experienced by Plaintiff Teresa Mary Palmer.

67. Defendants SMMC's and MAPS's conduct was outrageous because Defendants acted with an evil motive and/or with reckless indifference to the rights of Plaintiffs, thereby entitling Plaintiffs to recover punitive damages from Defendants.

68. WHEREFORE, by reasons of the premises contained herein, Plaintiffs Gary Dean Grider, Teresa Marita Palmer, and James William Palmer, respectfully requests that judgement be entered in favor of Plaintiffs Gary Dean Grider, Teresa Marita Palmer, and James William Palmer, and against Defendants SMMC and MAPS, in excess of Seventy-Five Thousand Dollars for compensatory damages in an amount that is fair and reasonable, plus punitive damages in an amount sufficient to deter Defendants and others from the same or similar conduct, plus pre-judgment interest and post-judgment interest as provided by law and equity, plus court costs, and for such other and further relief as is just and proper.

69. WHEREFORE, by reasons of the premises contained herein, Plaintiff Teresa Mary Palmer respectfully requests that judgement be entered in her favor against Defendants SMMC and MAPS, in excess of Seventy-Five Thousand Dollars for compensatory damages in an amount that is fair and reasonable, plus punitive damages in an amount sufficient to deter Defendants and others from the same or similar conduct, plus pre-judgment interest and post-judgment interest as provided by law and equity, plus court costs, and for such other and further relief as is just and proper.

## COUNTS 13-19: INTENTIONAL TORT LIABILITY OF DEFENDANTS SMMC AND MAPS

Plaintiffs incorporate all previous paragraphs of this Complaint as though fully set forth here.

70. Defendants SMMC and MAPS have a duty to stabilize unstable patients admitted to the Birth Center. In order to stabilize a patient, an examination is needed to first determine the patient's status and provide a sound basis for the treatment plan. Defendants SMMC and MAPS violated their duty to stabilize an unstable patient when they failed to provide a readily available and critical resource (in-house, on-call, Board-certified OB Hospitalist physician) to resolve the inconclusive exam results determined by non-physician providers. Not having the physician resolve the inconclusive exam results amounts to "giving up early" in the clinical investigation, was ill-advised and dangerous and amounts to a violation of the Kansas doctrine of Intentional Torts.

71. Defendants SMMC and MAPS violated the standard of reasonable care and established hospital policy when they supported and encouraged 6 instances (vaginal exams) of unpermitted physical contact that caused Plaintiff Teresa Mary Palmer mental anguish, fear, pain and discomfort while failing to determine critical clinical information. Defendants discontinued examination efforts and discharged Plaintiff Teresa Mary Palmer without ever determining the information sought by all six attempts (examinations). Ending examination efforts without utilizing available resources to determine the information that justified the examinations in the first place, is not what Plaintiff Teresa Mary Palmer consented to and amounts to six instances of medical battery and renders the Defendants in violation of the Kansas Common Law doctrine of Intentional Torts.

72. During the course of Plaintiff Teresa Mary Palmer admission she was asked to evaluate her current pain level on a numerical scale of 1 to 10, with 10 representing the most pain possible. Plaintiff Teresa Mary Palmer on one occasion provided a numerical pain reference (NPR) of 3/10 and approximately 3 hours later when asked, she reported 5/10 indicating increasingly painful cramps. Discharging a patient with a five hour history of increasingly painful labor who walked into the

hospital but requires a wheel chair to leave, is ill-advised, dangerous and violates the Kansas doctrine of Intentional Torts.

73. Discharging a patient with instructions to seek medical attention/help if the patient develops any of four conditions, one of which is present at discharge, is dangerous and violates established hospital policy and amounts to reckless indifference to an abnormally dangerous activity and injured Plaintiffs by inflicting on them the extreme emotional distress of learning Defendants SMMC and MAPS had no clue as to what was happening violates the Kansas doctrine of Intentional Torts.

74. Defendants SMMC and MAPS were aware that Plaintiff Teresa Mary Palmer was a high-risk patient due to advanced maternal age (42) with no prior births, suffering gestational diabetes and chronic hypertension, in preterm labor at 36.2 weeks gestation.  Once admitted to the Birth Center, several examinations by various non-physician providers failed to determine critically important data needed to treat Plaintiff Teresa Mary Palmer.  After six examinations, the results remained inconclusive and Plaintiff Teresa Mary Palmer was discharged without ever determining the critical parameters sought in each of the six virginal exams.  Failing to utilize the readily available resource of a Board-certified physician (the resident on-call OB Hospitalist) to resolve the uncertainty of critically important data, prior to discharge, renders Defendants SMMC and MAPS in violation of the Kansas doctrine of Intentional Torts.

75. Plaintiff Teresa Mary Palmer established a doctor patient relationship with Angela Piquard, M.D. (hereinafter Dr. P) prior to the end of her first trimester of pregnancy.  It was agreed between Plaintiff Teresa Mary Palmer and Defendant SMMC and Dr. P, that in return for medical insurance payments, Dr. P would provide labor and delivery services to Plaintiff Teresa Mary Palmer with the delivery at Defendant SMMC's Birth Center.

76. Defendant SMMC failed to provide needed delivery services and essentially severed the professional relationship with Plaintiff Teresa Mary Palmer at a time when continued care, treatment, or services were critically necessary and without providing reasonable notice and opportunity to seek alternative professional services when Plaintiff Teresa Mary Palmer was abandoned, discharged and

sent home in a private car, which amounts to Defendants SMMC violating the Kansas doctrine of Intentional Torts.

77. Defendant MAPS failed to provide needed delivery services and essentially severed the professional relationship with Plaintiff Teresa Mary Palmer at a time when continued care, treatment, or services were critically necessary and without providing reasonable notice and opportunity to seek alternative professional services when Plaintiff Teresa Mary Palmer was abandoned, discharged and sent home in a private car, which amounts to Defendant MAPS violating the Kansas doctrine of Intentional Torts. .

78. The dangerous and unplanned home birth that resulted from the abandonment and improper discharge of Plaintiff Teresa Mary Palmer caused severe emotional distress to all Plaintiffs, with additional physical pain and suffering to Plaintiff Teresa Mary Palmer, creating the fear of worsening complications in a home environment lacking the security of a physician assisted, hospital birth we had planned on since Plaintiff Teresa Mary Palmer became pregnant.

79. Defendants SMMC's and MAPS's conduct was outrageous because Defendants acted with an evil motive and/or with reckless indifference to the rights of Plaintiffs, thereby entitling Plaintiffs to recover punitive damages from Defendants.

80. WHEREFORE, by reasons of the premises contained herein, Plaintiffs Gary Dean Grider, Teresa Marita Palmer, and James William Palmer, respectfully requests that judgement be entered in favor of Plaintiffs Gary Dean Grider, Teresa Marita Palmer, and James William Palmer, and against Defendants SMMC and MAPS, in excess of Seventy-Five Thousand Dollars for compensatory damages in an amount that is fair and reasonable, plus punitive damages in an amount sufficient to deter Defendants and others from the same or similar conduct, plus pre-judgment interest and post-judgment interest as provided by law and equity, plus court costs, and for such other and further relief as is just and proper.

81. WHEREFORE, by reasons of the premises contained herein, Plaintiff Teresa Mary Palmer respectfully requests that judgement be entered in her favor against Defendants SMMC and MAPS, in excess of Seventy-Five Thousand Dollars for compensatory damages in an amount that is fair and reasonable, plus punitive damages in an amount sufficient to deter Defendants and others from the same or similar conduct, plus pre-judgment interest and post-judgment interest as provided by law and equity, plus court costs, and for such other and further relief as is just and proper.

**COUNTS 20-23 :   CONTRACT LIABILITY OF DEFENDANTS  SMMC AND MAPS**

   Plaintiffs incorporate all previous paragraphs of this Complaint as though fully set forth here.

82. Plaintiff Teresa Mary Palmer used the Reproductive Resource Center for medical care related to her pregnancy and learned about Angela Piquard, M.D. from their staff.

83. Teresa Mary Palmer established a doctor patient relationship with Angela Piquard, M.D. (hereinafter Dr. P) early in her first trimester of pregnancy.  It was agreed between Plaintiff Teresa Mary Palmer and Defendant SMMC and Dr. P, that in return for medical insurance payments, Dr. P would provide labor and delivery services to Plaintiff Teresa Mary Palmer and Defendant SMMC would make its facilities available for her labor and delivery.

84. Prior to her admission to Defendant SMMS's Birth Center, Plaintiff Teresa Mary Palmer provided her medical insurance information needed for hospital and physician billing.

85. Plaintiffs Teresa Mary Palmer and Gary Dean Grider visited Defendant SMMC's Birth Center for the purpose of  Level II testing to determine *inter alia,* the gender of the fetus, around the 20th week of gestation.

86.  Plaintiff Teresa Mary Palmer, as part of her prenatal care and after receiving her diagnosis of gestational diabetes, attended Defendant SMMC's Diabetes Education Program.

87. Plaintiffs Teresa Mary Palmer and Gary Dean Grider and Teresa Marita Palmer, and James William Palmer attended a 2 hour "Navigation Tour" meeting at Defendant's Birth Center prior to Plaintiff Teresa Mary Palmer's admission to the Birth Center.  At the Navigation Tour meeting with Mary Sattler, RN, Maternity Navigator, Plaintiffs were given many papers and brochures and books that described what to expect when admitted and listed Birth Center resources available. Plaintiffs also provided information needed by Defendant SMMC.

88. Defendant SMMC beached its contractual duty to Plaintiffs by failing to provide needed delivery services and essentially severed the professional relationship with Plaintiff Teresa Mary Palmer at a time when continued care, treatment, or services were critically necessary and without providing reasonable notice and opportunity to seek alternative professional services when Plaintiff Teresa Mary Palmer was abandoned, discharged and sent home in a private car.

89. Defendant MAPS beached its contractual duty to Plaintiffs when it failed to provide needed delivery services and essentially severed the professional relationship with Plaintiff Teresa Mary Palmer at a time when continued care, treatment, or services were critically necessary and without providing reasonable notice and opportunity to seek alternative professional services when Plaintiff Teresa Mary Palmer was abandoned, discharged and sent home in a private car.

90. Defendant SMMC breached its contractual duty to provide Plaintiffs a "Patient-Centered Bedside Shift Report" as described in the literature provided on the Navigation Tour, when it failed to provide any bedside conference or shift change report to Plaintiff Teresa Mary Palmer.

91. Defendant SMMC breached its contractual duty to Plaintiffs by failing to provide the readily available resource of a Board-certified physician (the resident on-call OB Hospitalist) to resolve Plaintiff Teresa Mary Palmer's problems prior to discharge, as described in brochures and data sheets provided at the Navigation Tour meeting.

92. The dangerous and unplanned home birth that resulted from the abandonment and improper discharge of Plaintiff Teresa Mary Palmer caused severe emotional distress to all Plaintiffs, with

additional physical pain and suffering to Plaintiff Teresa Mary Palmer, creating the fear of worsening complications in a home environment lacking the security of a physician assisted, hospital birth we had planned on since Plaintiff Teresa Mary Palmer became pregnant.

93. Defendants SMMC's and MAPS's conduct was outrageous because Defendants acted with an evil motive and/or with reckless indifference to the rights of Plaintiffs, thereby entitling Plaintiffs to recover punitive damages from Defendants.

94. WHEREFORE, by reasons of the premises contained herein, Plaintiffs Gary Dean Grider, Teresa Marita Palmer, and James William Palmer, respectfully requests that judgement be entered in favor of Plaintiffs Gary Dean Grider, Teresa Marita Palmer, and James William Palmer, and against Defendants SMMC and MAPS, in excess of Seventy-Five Thousand Dollars for compensatory damages in an amount that is fair and reasonable, plus punitive damages in an amount sufficient to deter Defendants and others from the same or similar conduct, plus pre-judgment interest and post-judgment interest as provided by law and equity, plus court costs, and for such other and further relief as is just and proper.

95. WHEREFORE, by reasons of the premises contained herein, Plaintiff Teresa Mary Palmer respectfully requests that judgement be entered in her favor against Defendants SMMC and MAPS, in excess of Seventy-Five Thousand Dollars for compensatory damages in an amount that is fair and reasonable, plus punitive damages in an amount sufficient to deter Defendants and others from the same or similar conduct, plus pre-judgment interest and post-judgment interest as provided by law and equity, plus court costs, and for such other and further relief as is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs request a jury trial on all issues in this case with a trial in the Kansas City, KS area.

Respectfully submitted,

s/Teresa Mary Palmer
Appearing pro se
2910 West 92nd Ter                    This  2nd   day of November, 2016.
Leawood, KS 66206
(816) 588-4955

s/Gary Dean Grider
Appearing pro se
2910 West 92nd Ter
Leawood, KS 66206
(816) 916-2456

s/Teresa Marita Palmer
Appearing pro se
413 Shoshone Blvd.
P.O. Box 501
Osburn, ID  83849
(509) 230-0429

s/James William Palmer
Appearing pro se
413 Shoshone Blvd.
P.O. Box 501
Osburn, ID  83849
(571) 762-5541
dc12191946@gmail.com